## Hall-Watson Furniture Company v. Cumberland Telephone & Telegraph Company.

(Decided May 9, 1924.)

### Appeal from Whitley Circuit Court.

1. Corporations—Corporation May be Bound by Manner in which it Permits Officers to Conduct Affairs Without Formal Grant of Power.—A corporation within its power may be bound by manner in which it permits officers to conduct its affairs, even though there is no formal delegated authority, and even where officer acts in violation of directions if the board subsequently ratifies or acquiesces.

2. Banks and Banking—Bank and Vendee Estopped to Deny Validity of Leases, Though Cashier and Vice President Not Authorized to Execute.—Where one as cashier and vice president, with knowledge and acquiescence of directors of bank, attended to renting of rooms, bank and its vendee were estopped from denying validity of particular leases for want of authority.

3. Landlord and Tenant—Purchaser of Building Bound by Recorded Lease of Rooms.—Purchaser of building cannot deny knowledge of terms of recorded lease of rooms therein.

4. Landlord and Tenant—Purchaser of Building Bound by Unrecorded Lease.—Purchaser of building was bound by unrecorded lease of rooms, including renewal clause, where it knew that there was a lease, but exercised no diligence to ascertain its terms.

STEPHENS & STEELY for appellant.

TYE & SILER and TRABUE, DOOLAN, HELM & HELM for appellee.

OPINION OF THE COURT BY JUDGE CLARKE—Affirming.

In August, 1915, the First National Bank of Corbin, Kentucky, leased two rooms on the second floor of its

banking house to appellee for a term expiring November 1, 1923. This lease was duly executed, acknowledged, and recorded. Later, the bank leased two adjoining rooms to appellee for a period of two and five-sixth years, which also expired on November 1, 1923. This lease was not recorded. Both leases contained this identical clause:

"Lessee shall have the privilege of renewing this lease at the expiration of the term herein created, upon the same terms and conditions, for a further period of five (5) years, upon giving written notice of its desire to so renew, not less than sixty (60) days before the expiration of said present term."

On February 23, 1922, the bank sold and conveyed the entire building to appellant furniture company. Appellee was then in possession of the four rooms on the second floor of the building, and regularly thereafter paid to appellant each month the rental provided for in said leases for the four rooms occupied by it. In October and December, 1922, appellee gave appellant written notice that it exercised its option to renew the leases, and demanded of the furniture company that it execute and deliver to it a renewal lease in accordance with its contracts for a period of five years beginning November 1, 1923.

On September 4, 1923, appellee presented to appellant a lease in duplicate, providing for a renewal of the two leases in accordance with the terms thereof, and demanded that appellant execute same, which it refused to do, and demanded that appellee vacate the premises on November 1, 1923.

Appellee then instituted this action for the declaration and enforcement of its contract right to a renewal of the leases, and the judgment appealed from grants it the relief sought.

1. The first contention for appellant is, that both leases are void because D. B. Calvert, who executed one as cashier and the other as vice president of the bank, had not been authorized so to do by the board of directors at any official meeting of the board. It is admitted in both the pleadings and the evidence that there is no record of any such action by the board of directors, and it is insisted by appellant that it is the settled principle of law in this state that a corporation can act only through its directors at an official meeting, regularly

held. In support of this contention, we are referred to Bastin v. Given's Admr., 170 Ky. 201, 185 S. W. 835, where it is so stated.

While this statement of the law is possibly correct in theory, it is nevertheless true that in practice, a corporation may, and often does, bind itself by the actions of its executive officers and agents without formal grant of power so to do, and this court uniformly has recognized this generally accepted principle of law. Bell & Coggeshall Co. v. Ky. Glass Works Co., 106 Ky. 7, 50 S. W. 2; Star Mills Co. v. Bell, 140 Ky. 197; Nelson-Bethel Co. v. Pitts, 141 Ky. 242, 132 S. W. 430; Elk Valley Coal Co. v. Thompson, 106 Ky. 614, 150 S. W. 817; Caddy Oil Co. v. Sommer, 186 Ky. 843, 218 S. W. 288; Commonwealth v. Mehler, 183 Ky. 11, 208 S. W. 13.

In the last named case we said:

"Authorities are abundant that a corporation within its power may be bound by the manner in which it permits its officers in the regular course of business to conduct its affairs, even though there is no formal delegated authority for such officer to so act, and this, too, even though the act of an officer was in violation of express and formal direction, if by subsequent action the board had ratified such action or had merely acquiesced therein."

In so far therefore as the statement in Bastin v. Given's Admr., *supra*, upon which appellant relies, is susceptible of a construction in conflict with the above statement of the law, it is out of line and must be overruled.

As it is admitted that Mr. Calvert, both as cashier and vice president, with the knowledge and acquiescence of the directors of the bank, attended to the renting, not only of the rooms leased to appellee but all of the extra rooms of its banking house, the bank would have been estopped from denying the validity of these leases; and assuming, but not deciding, that appellant, as assignee of the bank, could plead the acts of its officer were *ultra vires*, it is clear that in doing so it could not occupy a better position than the bank itself would have occupied.

We therefore conclude that there is no merit in the contention that the leases are void.

2. As the first lease was a recordable instrument and of record when appellant purchased the property,

it can not deny knowledge of its terms, and as it accepted from appellee rent, paid monthly in accordance therewith from the time it became the owner of the property until the expiration of the lease, it is too clear for argument that appellant is bound thereby, and counsel for appellant do not seriously argue otherwise.

3.   They do not contend, however, that appellant was not bound by the terms of the second lease, because of the fact that it was never recorded.

This argument of course is based upon the theory that with reference to this lease, appellant was an innocent purchaser without notice.   The evidence however does not sustain this contention.   Appellant not only knew that appellee was occupying the rooms covered by this lease, and was thereby put upon notice to ascertain by what right it did so, but it undertook to find out for itself the terms of its lease, and was informed by both Mr. Calvert, for the bank, and Mr. Tallent, appellee's local manager, that the former had a copy of the lease, which it failed to have him exhibit, although he promised to do so when he could find time to locate it.

Having notice of the existence of this lease, and failing to exercise diligence to ascertain its terms, it is quite clear appellant is chargeable with knowledge of same.

4.   It is finally argued that appellee is estopped to rely upon the renewal clause of its unrecorded lease because Mr. Tallent, its local manager, failed to inform it that appellee had or claimed a right of renewal, when, before its purchase of the property, it asked him when the lease terminated and he said he did not know.

One of several troubles with this statement in another way of the contention just disposed of is, that it leaves out of consideration the fact that, at the time, Mr. Tallent told appellant that Mr. Calvert had a copy of the lease which contained the renewal clause, but which it neglected to examine.

Judgment affirmed.