# Estes v. Gatliff et al.

June 9, 1942.

Joe S. Feather and J. B. Johnson for appellant.

H. C. Gillis, T. E. Mahan and L. O. Siler for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—Reversing.

J. T. Estes sued K. D. Gatliff, Jellico Coal Mining Company and Nancy Marie White for $9,700 damages for breach of contract, a lease. He was required to elect whether he would prosecute the suit against Gatliff or

the other defendants. Electing to proceed against Gat-liff, his petition was dismissed without prejudice against the other parties. A demurrer to the petition as against Gatliff was sustained. The plaintiff suffered its dismissal by failing to plead further, and has brought an appeal from both orders.

Material portions of the lease, which is dated June 20, 1939, may be thus summarized: The Jellico Coal Mining Company (stated to be the owner) leased a certain parcel of land in the village of Mountain Ash to Estes for ten years for the purpose of constructing a bulk distributing station of gasoline and other petroleum products. Improvements were to be completed within four months. At the expiration of the lease the lessee had the right to remove the improvements and all property placed on the premises by him. The company "now has" a general filling station adjoining the lot called the "Blue Bird Tea Room." The consideration for the lease was an amount equal to 1 cent on each gallon of gasoline sold at the Tea Room station until the bulk station should be completed. Thereafter the rent should be the equivalent of 1¼ cent a gallon. It was further provided that Estes had the right to name the brand of gasoline to be sold there. This clause was to be effective against the coal company and "all its assigns, lessees and agents."

On August 17, 1939, Nancy Marie White executed and delivered to Estes a paper which recited that she was the legal owner of the premises described as the "Blue Bird Tea Room," and in consideration of $5 cash and $5 a year thereafter she agreed to the terms of the above contract "in their entirety and in every respect, and do hereby covenant that I am bound by the terms of said contract as is the said Jellico Coal Mining Company."

The petition sets up these contracts and alleges, among other things, that on September 13, 1939, the defendants, Jellico Coal Mining Company and Nancy Marie White, and E. F. White and wife, conveyed the leased premises and the Blue Bird Tea Room property to the defendant Gatliff. At that time the plaintiff was in the open and notorious possession of the premises and engaged in the construction of the bulk station and improvements provided for in the contract, of which the defendant Gatliff had actual notice. The plaintiff did not know and could not by the exercise of ordinary care have known of Gatliff's intention to buy the property. On

September 19, 1939, the plaintiff notified the parties that the "Texaco" brand of petroleum products should be sold at the Tea Room filling station. On the same day, it is charged, the defendant Gatliff repudiated the lease; notified the plaintiff he would not be bound by it; ordered him to desist from further construction of the improvements; notified him to remove all his property from the premises; and forced him to give up possession thereof. Since that time, it is alleged, the defendant has refused to permit plaintiff to have possession of the leased premises and has refused to recognize the agreement relating to the sale of "Texaco" products at the Tea Room filling station. The plaintiff averred that he had fully complied with each and every obligation imposed upon him by the contract up to the time the defendant Gatliff had repudiated it and forced him to vacate the premises. He further alleged that the Jellico Coal Mining Company and Nancy Marie White had breached the implied covenant that he should have the quiet enjoyment of the premises during the term of the lease by having sold the same to Gatliff, knowing that he was plaintiff's competitor and that he would damage and destroy plaintiff's possession. This, it is charged, was a breach of contract and an intentional wrong.

The motion to require the plaintiff to elect was based upon the concept that he was endeavoring to join an action ex delicto against the Coal Company and Miss White with an action ex contractu against Gatliff, which is not permissible. Section 83, Civil Code of Practice; Little v. Consolidation Coal Co., 169 Ky. 514, 184 S. W. 873, 874. While the petition does contain some allegations of a tortious nature, it is essentially an action based on the violation of covenants and agreements contained in the lease by all the parties, from which it is alleged plaintiff suffered damages. Cf. Ocean Acc. & Guar. Corp. v. Milford Bank, 236 Ky. 457, 33 S. W. (2d) 312. The pleader was endeavoring to charge that the original lessors had broken the terms of their agreement by selling the property, with the knowledge that the plaintiff's implied rights would be interfered with. But the dismissal of his petition against these two parties was without prejudice. That is not a final judgment from which an appeal lies. Magill v. Mercantile Trust Co., 81 Ky. 129; Cf., Long v. Reiss, 290 Ky. 198, 160 S. W. (2d) 668. Therefore, it is necessary that we dismiss the appeal in

so far as it is against the Jellico Coal Mining Company and Nancy Marie White.

While the petition is not scientifically drawn, it seems to us to state a cause of action against Gatliff. The grounds upon which the appellee bases his contention that the demurrer was properly sustained appear in their disposition.

Although it is not expressly pleaded that the Coal Company was the owner of the property covered by the lease, the two contracts are sufficient to show that it had leased the premises. The relation of landlord and tenant does not depend upon the landlord's title but upon the agreement. 35 C. J. 1211. If the Coal Company had no such right, that is a matter of defense. The same is true as to the point that the petition does not allege that E. F. White, who signed the lease as president of the Coal Company, had authority to do so. Gatliff, as the vendee of the premises, took title subject to plaintiff's lease, of which he had notice. Everidge v. Martin, 164 Ky. 497, 175 S. W. 1004. The lease was not recorded until September 19, the same day Gatliff recorded his deed. But the allegations of actual notice and open and public construction of the improvements, of which he had knowledge, were sufficient to charge him with notice. Russell's Ex'r v. Moore's Heirs, 60 Ky. 436, 3 Metc. 436; Mitchell v. First National Bank, 203 Ky. 770, 263 S. W. 15; Sentry Safety Control Corporation v. Broadway & Fourth Avenue Realty Co., 276 Ky. 648, 124 S. W. (2d) 1051. Gatliff assumed the relation of landlord by his purchase of the property and was bound by the terms of the lease. Section 2304, Kentucky Statutes; Ventura Hotel Co. v. Pabst Brewing Co., 109 S. W. 354, 33 Ky. Law Rep. 149; Hall-Watson Furniture Co., v. Cumberland Telephone & Telegraph Co., 203 Ky. 90, 261 S. W. 883.

The appellee insists there was no lawful eviction of the appellant as tenant, since constructive eviction is not recognized in this jurisdiction, citing in support of the argument cases involving a breach of warranty of title. We do not think the strictness of that rule applies to the relation of landlord and tenant. To evict a tenant is to deprive him of the possession of the leased premises or disturb him in their beneficial enjoyment so as to cause the tenant to abandon the premises. This amounts to a constructive eviction. It is not necessary that there

should have been an actual, physical ejection or even a lawsuit. There is an eviction if the acts of the landlord are such as will justify or warrant the tenant in leaving the premises and he does in fact abandon them. 32 Am. Jur., Landlord and Tenant, Sections 246, 479.

A failure to allege that the plaintiff had paid the stipulated rents is assigned as reason for sustaining the demurrer to the petition. In the absence of a provision to that effect in the contract or a declaration of a statute, the nonpayment of rent does not operate as a forfeiture of the lease; but there is no question that a provision in the contract for a forfeiture upon such default is valid and binding. Wender Blue Gem Coal Co. v. Louisville Property Co., 137 Ky. 339, 125 S. W. 732; Elliott v. Marrs, 222 Ky. 642, 1 S. W. (2d) 1049; Dean v. Stillwell, 284 Ky. 639, 145 S. W. (2d) 830; 32 Am. Jur., Landlord and Tenant, Section 852; 35 C. J. 1065. The lease involved in this case did contain a provision that upon default in payment of rent for more than a month the lessor would cancel the lease "by written notice, to become effective in ten days." The plaintiff's allegation that he had complied fully with all the terms of the contract is a conclusion of the pleader and not sufficient as an affirmative allegation that he had paid the rents. We are of opinion, however, that it was incumbent upon the defendant to plead and establish that he had given the proper written notice of cancellation. Some provisions for forfeiture, as in the cases cited, are self-executing, but the right of forfeiture in this lease was dependent upon a written notice. The landlord's right of entry or to dispossess the tenant did not accrue until he had exercised the option to cancel the lease according to its terms. 36 C. J. 608, 610.

The appeal from the orders requiring an election and dismissing the petition without prejudice as to Jellico Coal Mining Company and Nancy Marie White is dismissed. The judgment dismissing the petition as against the appellee K. D. Gatliff is reversed.